## A96A1396. NEWELL v. GREAT ATLANTIC & PACIFIC TEA COMPANY, INC.
### (476 SE2d 631)

JOHNSON, Judge.

Rose Newell brought this action against the Great Atlantic & Pacific Tea Company, Inc. ("A & P"), for injuries she sustained in a fall after her foot allegedly became caught in a tear in a floormat placed between two sets of automatic doors at the store's entrance. A & P moved for summary judgment, claiming that Newell failed to exercise ordinary care for her own safety and that there was no evidence that it had knowledge of the hazard.[1] Without specifying its reasons for doing so, the trial court granted A & P's motion. Newell appeals.

1. Newell argues that the trial court erred in granting summary judgment to A & P when a genuine issue of material fact exists as to whether she exercised ordinary care for her own safety. We agree.

"The owner or occupier of land is under a duty to invitees to discover and either keep the premises safe from or warn of hidden dangers or defects not observable to such invitees in the exercise of ordinary care." (Citation and punctuation omitted.) *N. L. Indus. v. Madison*, 176 Ga. App. 451, 454 (1) (336 SE2d 574) (1985). An invitee is not obligated to inspect the premises to discover latent defects. Id. at 455 (1). Newell testified that as she walked into the store, she "scanned" the area and paid attention to where she was going. After she passed through one set of automatic doors and before she made it through a second set of doors, she stumbled and fell. After she fell, a store employee, who she later learned was the manager, helped her up and asked what caused her to fall. Newell showed the manager the floormat, which had become "bunched up" after she tripped. In its "bunched up" condition, Newell could see that the mat was torn and that a corner was curled. The manager told a clerk to remove the mat. When asked on deposition if she could have seen the defect had she looked down at it, Newell replied that "if I probably would have stopped and took a long stare at the mat — instead of normally how you scan an area to clear it when you walk in, if I had stopped, looked down at the mat, I probably would have seen enough to walk around it. Not even associate it with falling still but just enough to walk around it." Newell's testimony that she was not looking directly at the floor as she entered the store because she was "scanning the area" to make sure it was safe does not show conclusively that she

---

[1] We note that in its brief A & P denies that any mat was ever placed inside the entrance to the store and questions whether Newell actually fell, since the store has no record of the fall. For the purposes of appeal, however, A & P has accepted Newell's allegations of the mat's presence and her fall.

was not exercising ordinary care. "Looking continuously, without intermission, for defects in a floor is not required in all circumstances. What is a reasonable lookout depends on all the circumstances at the time and place." (Citations and punctuation omitted.) *Chaves v. Kroger, Inc.*, 213 Ga. App. 348, 350 (444 SE2d 606) (1994).

We are not persuaded by A & P's argument that because the presence of the mat constituted a static condition, and because Newell had successfully traversed the mat before, she is presumed to have knowledge of its condition and is precluded from recovering. See *MARTA v. Fife*, 220 Ga. App. 298, 300 (2) (469 SE2d 420) (1996). The presence of a tear in a floormat is indeed a static condition, as it is not dangerous unless someone fails to observe it and steps onto it. See generally id. However, the fact that Newell had traversed the same mat moments earlier and on previous occasions does not require a finding as a matter of law that she knew of the defect. "It is true that a person who has successfully negotiated a dangerous condition on a previous occasion is presumed to have knowledge of it and cannot recover for resulting injuries." (Citations and punctuation omitted.) *Allen v. Roscoe Weston Motels Ga.*, 220 Ga. App. 402, 404 (469 SE2d 492) (1996). "In cases where this rule has been applied, however, the defect causing the fall invariably has been a static condition *readily discernible* to a person exercising reasonable care for his own safety, a factual circumstance not necessarily present in this case." (Emphasis supplied.) *Martin v. Dunwoody-Shallowford Partners, L.P.*, 217 Ga. App. 559, 561 (2) (b) (458 SE2d 388) (1995). According to Newell's testimony, the defect was difficult to see without close inspection. Viewing the evidence in a light most favorable to the nonmovant on motion for summary judgment, Newell's testimony that she was paying attention to where she was going, that she did not see any defect in the mat before her trip caused it to bunch up, and that she might have seen it had she stopped walking and stared at the mat creates an issue of material fact as to whether the defect was observable to her in the exercise of ordinary care and whether she can therefore be presumed to have had knowledge of it. "It can not be held as a matter of law that the circumstances were such that an ordinarily prudent person would have reason to apprehend its existence." (Citation and punctuation omitted.) *Chotas v. J. P. Allen & Co.*, 113 Ga. App. 731, 733 (149 SE2d 527) (1966). Therefore, summary judgment was not authorized on the basis of Newell's failure to exercise ordinary care for her own safety.

2. Nor was summary judgment authorized based on the lack of evidence that A & P had knowledge of the defect. "The principle of equal or superior knowledge is not limited to slip and fall cases, but applies to 'static' defective or dangerous conditions on property." (Citations and punctuation omitted.) *Ballard v. Southern Regional*

*Med. Center,* 216 Ga. App. 96, 97 (1) (453 SE2d 123) (1995). While there is no evidence that the proprietor here had actual knowledge of the defect in the mat, liability may also be based upon constructive knowledge. See id. Constructive knowledge may be established by showing either that: (1) an employee of the proprietor was in the immediate area of the hazard and had the means and opportunity to easily see and remove it; or (2) the proprietor failed to exercise reasonable care in inspecting the premises. See *Armenise v. Adventist Health System/Sunbelt,* 219 Ga. App. 591, 592-593 (466 SE2d 58) (1995). Newell relies upon the second theory, arguing that constructive knowledge is shown by A & P's failure to exercise reasonable care in inspecting the premises.

"In seeking summary judgment, the defendant has the initial burden of showing that this theory of recovery is not viable by demonstrating that it exercised reasonable care in inspecting the premises. This burden may be carried by evidence of compliance with reasonable inspection procedures." (Citations omitted.) *Daniel v. John Q. Carter Enterprises,* 218 Ga. App. 223, 224 (460 SE2d 838) (1995). In this regard, A & P points to the manager's testimony that it is his practice and "pretty much A & P's policy" to inspect the premises, including the front entrance area, every two hours. Although he testified that he followed this procedure in May 1993, the month the fall occurred, he gave no testimony specifying what inspection procedure was followed on May 4, 1993, the day of the accident. He kept no records of inspections and could not remember the inspection route he took on the day of the fall or how many times he inspected the store during that month. In addition, the manager had "no idea" whether anyone else inspected the store in the manner described during May 1993. He added that he did not necessarily inspect the store every two hours and when asked if he was ever late conducting inspections, he replied, "It's hard to say. It might be earlier or later."

"Construing the evidence most strongly against [movant], its manager's [testimony] went merely to the general existence of a customary inspection procedure and would not be sufficient to negate the possibility that, on this specific occasion, there had been a deviation from that procedure. If [movant's] manager cannot state that [he] was adhering to [his] customary inspection procedures on the specific day in question, the mere existence of such customary procedures would prove nothing." *Food Giant v. Cooke,* 186 Ga. App. 253, 255 (1) (366 SE2d 781) (1988). And contrary to A & P's argument, where the manager cannot recall whether the inspection procedure had been adhered to on the day of the fall, the burden does not shift to the plaintiff to show how long the hazard existed. *Burke v. Bi-Lo,* 212 Ga. App. 115, 117 (441 SE2d 429) (1994). The evidence failed to

eliminate a factual issue as to whether A & P exercised reasonable care in inspecting the property. "Where an obstruction is in some way hidden, camouflaged or intrinsically unsafe, the question of ordinary care [in inspecting the premises] should be one for the jury." (Citations and punctuation omitted.) *Lawless v. Sasnett*, 200 Ga. App. 398, 399 (408 SE2d 432) (1991). The trial court erred in granting A & P's motion for summary judgment.

*Judgment reversed. McMurray, P. J., and Ruffin, J., concur.*

DECIDED SEPTEMBER 10, 1996 —
RECONSIDERATION DENIED SEPTEMBER 25, 1996 — 

*Roy S. Mullman, Teri D. Alpert*, for appellant.
*Sullivan, Hall, Booth & Smith, Alexander H. Booth, Karl M. Braun*, for appellee.