[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-13586

Non-Argument Calendar

_____

VINCENT BORKOWSKI,
MARY BORKOWSKI,

Plaintiffs-Appellants,

*versus*

WAL-MART STORES EAST, LP,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 6:20-cv-00043-RSB-CLR

_____

Before WILSON, BRASHER, AND ANDERSON, Circuit Judges.

PER CURIAM:

This case arises out of an incident in a Statesboro, Georgia Walmart store where Plaintiff-Appellant Vincent Borkowski slipped and fell on an unknown foreign substance near the flower and produce displays.  Vincent Borkowski and his wife Mary Borkowski (the Borkowskis) both filed suit against Defendant-Appellee Wal-Mart Stores East, L.P. (Walmart), asserting claims for negligence and loss of consortium, respectively.  The district court granted Walmart's motion for summary judgment, finding that as a matter of law Walmart's inspection procedures were reasonable, and therefore there was no genuine issue of material fact relating to the Borkowskis' claims of negligence.  After careful review, we affirm.

I.

The parties agree on certain facts relating to the slip-and-fall which we summarize here.  On March 27, 2022, the Borkowskis entered the Walmart Neighborhood Market in Statesboro, Georgia.  Near the front of the store were the produce and floral displays.  The produce display included what Walmart calls a "wet wall" section, that contained perishable produce that needed to stay cool and was intermittently misted with water.  At one end of the wet wall were small fruits such as grapes, cherries, and other berries.  Immediately adjacent to that section was the floral display

which contained cut flowers sitting in water.  Customers would remove the flowers from the water and carry them away for purchase.

Around 12:01 p.m. Mr. Borkowski was walking from the wet wall area near the small fruits towards the floral display.  As he passed the floral display he slipped and fell.  All parties agree, and the district court found, that there was a foreign substance on the floor.  The parties do not agree, and the record is unclear, about what that substance was or where it came from.

There was also surveillance footage from the Statesboro Walmart on the day of the accident.  That footage showed that, approximately twenty-six minutes before Mr. Borkowski fell, at around 11:36 a.m., a Walmart employee inspected and mopped the area where he slipped.  Both parties presented significant evidence relating to Walmart's corporate policies regarding inspections and floor mats to the district court.

The Borkowskis filed their suit in Bulloch County Superior Court, and Walmart removed the case to the United States District Court for the Southern District of Georgia based on diversity jurisdiction.  28 U.S.C. §§ 1332, 1441.  After discovery, Walmart moved for, and the district court granted, summary judgment.  This appeal followed.

## II.

We review grants of summary judgment de novo. *Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018).  Summary

judgment is appropriate where there is a genuine issue of material fact, drawing all inferences in favor of the non-moving party. *Id.* To withstand summary judgment, the factual dispute must be both material and genuine; both are necessary conditions to granting summary judgment. *Id.* A dispute is material if it has the possibility of affecting or changing the outcome of the case. *Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1303 (11th Cir. 2016). In other words, a non-movant cannot avoid summary judgment by adducing evidence of a dispute on a point that does not change the outcome of the case.

The Borkowskis raise two arguments on appeal. First, they argue the district court erred in granting summary judgment on their claim that Walmart did not take reasonable safety precautions by placing down absorbent mats. Second, they argue that the district court erred in finding that Walmart lacked constructive knowledge of the hazard that caused Mr. Borkowski's fall because Walmart's inspection procedure was reasonable as a matter of law. Because knowledge is a required element for slip-and-fall cases under Georgia premises liability law, we address their second argument first.

Because this is a diversity action arising out of allegedly tortious acts in Georgia, Georgia tort law applies. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). We are bound by decisions of the Supreme Court of Georgia and the Court of Appeals of Georgia on issues of Georgia law. *Bravo v. United States*, 577 F.3d 1324, 1325 (11th Cir. 2009) (per curiam).

The Georgia Supreme Court has developed a burden-shifting framework for the resolution of slip-and-fall premises liability cases. In addition to the traditional tort elements, plaintiffs must show (1) that the store owner had "actual or constructive knowledge of the hazard"; and (2) that "the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the [store owner]." *Robinson v. Kroger Co.*, 493 S.E.2d 403, 414 (Ga. 1997). However, this second burden is not "shouldered" until the defendant-owner has established negligence on the part of the plaintiff. *Id.* Nor is this prong before us at this stage in the case. This framework reflects the principle that "the true basis for an owner's liability is his superior knowledge" of the hazard over the invitee's knowledge. *Garrett v. Hanes*, 616 S.E.2d 202, 204 (Ga. Ct. App. 2005).

The Borkowskis do not argue that Walmart had actual knowledge of the foreign substance on the floor, so they must proceed under the constructive knowledge theory. Constructive knowledge may be shown by evidence that "(1) a store employee was in the immediate area of the hazard and could have easily seen the substance or (2) the foreign substance remained long enough that ordinary diligence by the store employees should have discovered it." *Johnson v. All Am. Quality Foods, Inc.*, 798 S.E.2d 274, 277 (Ga. Ct. App. 2017). The Borkowskis do not contend that there was a Walmart employee in the vicinity, so they are using the second prong of this test. Under the second prong, Georgia courts may infer constructive knowledge if the plaintiff shows that the

owner lacked reasonable inspection procedures or failed to follow them. *Id.* This creates a second burden-shifting framework. For a store owner to win summary judgment on their lack of constructive knowledge they must first show that they had and followed reasonable inspection procedures. *Id.* Only after making that showing does the burden shift to the plaintiff to show that the hazard had been present for a sufficient length of time such that reasonable diligence by the owner would have discovered it. *Id.* If the plaintiff fails to produce this evidence, the defendant-owner is entitled to summary judgment on constructive knowledge. *Id.*

The Georgia Court of Appeals has held that, under certain circumstances, if an inspection occurs within a "brief period" of time before the fall, then the inspection was reasonable as a matter of law. *See, e.g.*, *Medders v. Kroger Co.*, 572 S.E.2d 386, 388 (Ga. Ct. App. 2002). By showing that they actually conducted an inspection within that "brief period," the owner establishes that their inspection procedures were reasonable "regardless of any inspection program." *Id.* The burden then shifts back to the plaintiff to create a genuine issue of fact and show that the hazard had been on the floor for an unreasonably long time. *Walmart Stores E. L.P. v. Benson*, 806 S.E.2d 25, 30 (Ga. Ct. App. 2017) ("Because Walmart established that it had followed a reasonable inspection procedure, the burden shifted to [the plaintiff] to show how long the liquid had been on the floor.").

The Borkowskis argue that reliance on the "brief period" cases is misplaced and cite *Shepard v. Winn Dixie Stores, Inc.*, 527

S.E.2d 36 (Ga. Ct. App. 1999). In citing *Shepard*, the Borkowskis argue that in addition to timing, the court should consider other factors such as "the nature of the business, the size of the store, the number of customers, the nature of the dangerous condition, and the store's location." 527 S.E.2d at 39. However, *Benson* clarifies that these factors are more apt in cases where "a proprietor has notice of the risk of a particular hazard" that is recurring. 806 S.E.2d at 29 (citing *Food Lion, LLC, v. Walker*, 660 S.E.2d 426 (Ga. Ct. App. 2008)). In *Food Lion*, there was direct testimony from the store manager that chicken blood made the floor slick and had been a known problem in the past and that "'regardless of how you do[ ] it, you're going to have a certain amount of [chicken blood]' dripping on the floor, which he described as 'see through' because of its water content." 660 S.E.2d at 428 (alteration in original). On the other hand, the Georgia Court of Appeals has considered slip-and-falls resulting from grapes in produce sections and found no need to use the *Shepard* factors. *See, e.g., Wallace v. Wal-Mart Stores, Inc.*, 612 S.E.2d 528, 531–32 (Ga. Ct. App. 2005) (utilizing the "brief period" rule when plaintiff slipped on grapes and the last inspection was "15 to 20 minutes" prior); *Higgins v. Food Lion, Inc.*, 561 S.E.2d 440, 442 (Ga. Ct. App. 2002) (same, but last inspection was 35 minutes prior).

Here, the Borkowskis have presented little evidence to show that Walmart was on the kind of heightened notice that *Benson* contemplates for invoking the multi-factor *Shepard* inquiry. They have introduced evidence about Walmart's training and policies,

but this same evidence was held as insufficient in *Wallace*. 612 S.E.2d at 346. In *Wallace*, the plaintiffs attempted to show constructive knowledge by presenting evidence that "The Wal-Mart Manual" required an inspection procedure called "zone defense." *Id.* The plaintiffs contended that constructive knowledge was established because this policy showed Walmart thought heightened safety precautions were necessary in that area of the store. *Id.* However, the court in *Wallace* rejected this evidence as insufficient when juxtaposed with the undisputed evidence that an inspection had occurred in the "brief period" prior to the fall. *Id.*

In light of *Wallace*, we find the "brief period" cases a closer fit than the heightened notice cases. Therefore, because the uncontroverted video evidence shows that an inspection took place just twenty-six minutes before Mr. Borkowski's fall, we find that Walmart carried its burden, and its inspection procedures were reasonable as a matter of law.

The burden then shifts to the Borkowskis to show how long the hazard was on the floor and that reasonable diligence would have discovered it. *See Benson*, 806 S.E.2d at 30. However, the Borkowskis conceded they do not know how long the hazard had been on the floor. Therefore, they cannot carry their burden under this framework.

## III.

The Borkowskis also argue that the district court erred in granting summary judgment on their reasonable precautions

claim.  They argue that Walmart's policy required the placement of absorbent mats at or near the place where Mr. Borkowski fell and that this forms an independent basis for recovery, separate from the inspections claim.  Walmart disputes that mats were required, and argues that the Borkowskis have failed to show causation or, in the alternative, that they have waived this argument.

Georgia law establishes that a store owner cannot be held liable for a hazard unless they had knowledge of it.  *Robinson v. Kroger Co.*, 493 S.E.2d 403, 405 (Ga. 1997) ("[T]he fundamental basis for an owner or occupier's liability [is] that party's superior knowledge of the hazard encountered by the plaintiff.").  Because we have found that Walmart had no actual or constructive knowledge of the foreign substance that Mr. Borkowski slipped on, the reasonableness of failing to place absorbent mats down is immaterial.  *See Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1303 (11th Cir. 2016) ("A 'material' fact is one that 'might affect the outcome of the suit under governing law.'" (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The Borkowskis attempt to sidestep this issue by recasting the hazard from the foreign substance on the floor to the floor itself: "In other words, the foreseeable hazard was not a particular puddle on the floor, but the lack of a mat in a slippery area . . . ." Appellant's Br. at 22.  They introduce numerous manuals and policies to show that absorbent mats should have been placed in this area.  However, this attempted recasting is ineffective.  A person does not slip on a floor that is slick in the abstract; they slip on a

floor that is slick the moment their foot strikes the ground. The right focus of Walmart's knowledge, or lack thereof, is the particular hazard; here, the unidentified plant and water mixture. Evidence showing an area is generally slippery goes towards showing that the store had prior notice of a hazard and, as *Benson* suggests, triggering the multi-factor reasonableness scrutiny under *Shepard*. However, as discussed previously, *Wallace* has found this kind of generalized policy evidence unpersuasive in the specific produce section context at issue in this case.

The Borkowskis' citation to *Kroger Co. v. Schoenhoff*, 751 S.E.2d 438 (Ga. Ct. App. 2013), is similarly unavailing. In *Schoenhoff*, the plaintiff slipped near the floral section of a Kroger well after 6:00 p.m. on one of the busiest shopping days of the week. 751 S.E.2d at 441. The court upheld a denial of a directed verdict for the store owner where it was shown they had conducted *zero* inspections for the whole day and had failed to place floor mats as had been done in the past. *Id.* at 442. In that case, the lack of floor mats was noted as one factor supporting the jury's finding that the store did not follow reasonable procedures. *Id.* However here, an inspection occurred during the "brief period" before Mr. Borkowski's fall, and therefore Walmart's reasonable inspection procedures were established as a matter of law. *Medders*, 572 S.E.2d at 388. Under the Georgia precedents, once the inspection is reasonable under the "brief period" rule, outside evidence of policy and procedure on other occasions is irrelevant. *Id.* Accordingly, we affirm.

IV.

Finally, because we affirm the district court with respect to all of Mr. Borkowski's substantive negligence claims, we decline to address the arguments of procedural waiver related to Mrs. Borkowski's loss of consortium claim.  No party has advanced any arguments for reviving her loss of consortium except as derivative of the substantive negligence claim.

Accordingly, we affirm.

**AFFIRMED.**